ESTHER AGEE, RESPONDENT, v. JACK HERRING, APPELLANT.*

Kansas City Court of Appeals.   June 6, 1927.

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, section 3026, p. 1041, n. 33; section 3028, p. 1046, n. 62; Pleading, 31Cyc, p. 75, n. 56; Trial, 38Cyc, p. 1634, n. 15.

*Walter A. Raymond* and *Harry G. Kyle* for respondent.

*Horace Guffin* and *George W. Meyer* for appellant.

BLAND, J.—This is an action for damages for personal injuries. Plaintiff recovered a verdict and judgment in the sum of $2000 and defendant has appealed.

The facts show that plaintiff's injuries grew out of an automobile collision which took place at 20th and Main streets in Kansas City, Missouri, about 11:30 P. M. of December 9, 1923. Main street is a north and south street and about sixty feet in width; 20th street is an east and west street intersecting Main street and is about forty feet in width. Plaintiff's evidence tends to show that she was riding as a guest in a Ford automobile, being driven by one Griffin north on the east side of Main street. The automobile approached 20th street at a rate of speed of about fifteen miles per hour. There was a defect in the pavement on Main street from two to five feet south of the south curb of 20th street, which caused the driver of the Ford car to slow down. The car then proceeded across Main street at about ten miles per hour, being driven straight north, about two or three feet east of the most easterly rail of the double track street car line that ran along Main street at the place in controversy. The Ford car was entering the intersection of the two streets when defendant, driving a Dodge roadster, was seen on 20th street about forty feet west of Main street, approaching the latter at the rate of thirty miles per hour. Defendant continued on toward the east without slackening his speed or giving any signal warning and struck the Ford car about the center of 20th street or a little south thereof. The left front fender of the Dodge roadster struck the rear left wheel of the Ford causing the latter to be whirled completely around and upsetting it so that when it stopped it was bottom side up and near the northeast corner of the intersection of the two streets. After the collision the Dodge did not immediately stop but proceeded onward on 20th street a short distance when it turned around and came back. One of defendant's witnesses testified that the Ford car turned over three times. Plaintiff testified that she did not see the Dodge roadster at any time before the collision.

The evidence on behalf of defendant tended to show that he approached Main street at a reasonable rate of speed; that he stopped before entering the intersection and permitted a street car and several automobiles to pass in front of him on Main street, whereupon he shifted into low gear and proceeded at the rate of three or four miles per hour into the intersection and across Main street in an easterly direction to the right of the center of the intersection; that when he was crossing the intersection and approaching the rails of the northbound or east street car tracks he first observed the presence of the Ford car; that at this time the Ford was proceeding north on the east side of Main street and was about one hundred and fifty feet south of 20th street, traveling at a rate of speed of approximately

thirty-five to forty miles per hour. Concluding that he could not then proceed across the street in safety, defendant brought his automobile to a complete stop so as to permit the Ford car to pass in front of him. When he came to a stop the rear wheels of his automobile were on the east rail of the east or northbound street car track. His car was eleven feet, three inches long. When the Ford reached the south line of the intersection; its driver attempted to turn to the right and in so doing he struck against and "side-swiped" the right side of the bumper of defendant's automobile. The Ford driver then proceeded towards the building on the northeast corner of 20th and Main streets when it turned so sharply to the left that it lost its balance and turned over, coming to a stop at a point fifteen or twenty feet north of the north curb line of 20th street and near the east curb of Main street. Defendant's automobile remained with his rear wheels on the east or northbound street car rails with his front end turned somewhat in a northeasterly direction.

When the case went to trial the petition alleged a number of acts of negligence on the part of defendant, which acts and conduct on his part were pleaded as being merely negligent but near the close of plaintiff's testimony she amended her petition by inserting at the end of the charges of negligence the following: "Plaintiff further states that the aforesaid acts of the defendant were committed with a reckless, willful and wanton disregard for the safety of others." No exemplary damages were asked. Defendant objected to this amendment on the ground that—" . . . the petition as suggested by the plaintiff for the reason there is no evidence in the case to support any willful or wanton act of the defendant." Defendant filed no motion to require the plaintiff to elect but filed an answer which consisted of a general denial.

Defendant insists that the amended petition fails to state a cause of action in that on its face it is a *felo de se*, citing in support of this contention the case of Raming v. Met. St. Ry. Co., 157 Mo. 477, and some other cases founded upon the Raming case. What was said in the Raming case seems to uphold defendant's contention but that case, while it has not been overruled, has undergone considerable revision in recent years. It was later conceded that proof of negligence necessarily disproves willfulness and *vice versa* and for this reason the two allegations cannot be joined in the same count, as here, but that they are not repugnant and when founded upon the same acts, there is but one cause of action which may be stated in different counts. [Waechter v. Railroad Co., 113 Mo. App. 270.] That an allegation of negligence and one of reckless, willful and wanton acts are not wholly repugnant, is also established by the following authorities: Miller v. Harpster, 273 Mo. 605; Reel v. Consolidated Investment Co., 236 S. W. 43, 46; Troxell v. DeShon, 279 S. W. 438;

Myers v. Adler, 188 Mo. App. 607, 617. In Miller v. Harpster, supra, l. c. 614, the Supreme Court said concerning a contention similar to the one now made:

"This petition contains but one cause of action. It is founded upon a single injury. Precisely the same evidence must support it in either aspect in which we have considered it. No exemplary damage being asked, the same measure of damages applies alike under each theory. Had there existed any reason why the appellant might have profited by compelling the reformation of the petition or the election of the respondent to adopt one of the two rival theories before entering upon the trial, that reason was swept away in the developments of the trial itself, upon which the appellant voluntarily entered without asking such reformation or election, and he cannot now treat the course which he invited as error."

In Evans v. Railroad, 233 S. W. 397, cited by defendant, no question of pleading was involved but the court held that there was no evidence that the engineer of the train which struck the deceased was guilty of any reckless, willful, wanton or intentional act.

Complaint is made of the giving of plaintiff's instruction No. 1, which reads as follows:

"The court instructs the jury that if you find and believe from the evidence that at the time and place in question the plaintiff was riding as a passenger in a Ford touring car which was being driven and operated north on Main street, if so, and was approaching the intersection of that street and 20th street, both public streets in Kansas City, Jackson county, Missouri, if so, and that at that time the defendant was driving and operating an automobile east on 20th street at a high and negligent rate of speed, if so, and that defendant's said automobile was approaching said intersection, if so, and that just as the Ford touring car in which plaintiff was a passenger reached the center of 20th street in said intersection, if so, the defendant negligently drove his said automobile into violent collision with said Ford touring car in which plaintiff was riding, if so, and that he negligently failed to wait until the Ford touring car in which plaintiff was riding had crossed said intersection before driving his automobile into said intersection, if so, and that he negligently failed to swerve his automobile to one side before driving the same into violent collision with the Ford touring car in which plaintiff was riding, if so, and that the aforesaid acts were committed with a reckless, wanton and willful disregard for the safety of others, if so, and as a direct result of all the aforesaid negligent, reckless, wanton and willful acts of the defendant, if so, the Ford touring car in which plaintiff was riding was overturned and plaintiff suffered any injury, if so, then your verdict should be for the plaintiff unless you further find and

believe from the evidence that the plaintiff was herself guilty of negligence which directly contributed to her injuries, if any.''

Plaintiff's instruction P-3 reads as follows:

''By 'negligence' and 'negligently' is meant failure to exercise ordinary care. By 'ordinary care' is meant such care as a person of ordinary prudence would have used under the same or similar circumstances.

''By 'reckless, willful and wanton' is meant the doing of an act in reckless disregard for the safety of others when from a knowledge of surrounding circumstances and existing conditions the person charged must have known his conduct would naturally or probably result in injury to others.''

It is insisted that the court erred in failing to submit to the jury hypothetical facts from which they ''could conclude that the conduct of the defendant was willful and wanton.'' Of course, plaintiff was entitled to recover for the negligent acts of the defendant in bringing about the collision without any charge that they were committed recklessly, willfully and wantonly and from what we have said there was no necessity for plaintiff to have submitted such acts to the jury in order for her to recover. Therefore, in submitting that defendant's acts were committed with ''a reckless, wanton and willful disregard for the safety of others'' plaintiff had the jury find more than was required. Of course, the requirement of this additional finding redounded to the benefit of the defendant and he is not now in a position to complain. [Miller v. Harpster, supra, l. c. 615, 616.] It is, therefore, unnecessary for us to determine as to whether instruction No. 1 was erroneous in not submitting specific acts or in not defining the terms reckless, wanton and willful more explicitly than the definitions contained in plaintiff's instruction No. 3.

It is claimed that instruction No. 1 is—'' . . . faulty in that it assumes that defendant saw that the Ford automobile in which plaintiff was riding was in a position of peril, and likely to be struck by defendant's automobile, and in that it assumes that defendant had the time and the means at hand to avoid the collision after having had knowledge of plaintiff's peril; also that the defendant drove his automobile into the Ford in which the plaintiff was riding, a disputed and controverted fact.''

The instruction does not assume any fact that is submitted in it. [Warnke v. Rope Co.; 186 Mo. App. 30, 44, 45; Liljegren v. United Rys. Co., of St. Louis, 227 S. W. 925; Balton v. Knollman Paper Co., 253 S. W. 433.] But it may possibly be subject to the criticism that it fails to submit sufficient facts to the jury upon which they would be authorized to find that defendant was guilty of the negligent conduct mentioned in the instruction. In this connection it is insisted that the instruction constitutes a roving commission to the jury to

find any facts which they might think constituted the various acts of negligence submitted in the instruction; that the instruction should have submitted hypothetical facts which would authorize a finding on the part of the jury of the various acts of negligence mentioned in the instruction. However, the matters mentioned in the instruction are submitted in the conjunctive and one of these was the operation of the automobile at a high and negligent rate of speed. The jury, therefore, found that it was so operated and it was a question for the jury as to what constituted a high and negligent rate of speed under the circumstances. [Woods v. K. C. Light & Power Co., 212 S. W. 899, 902; Schinogle v. Baughman, 228 S. W. 897, 900.] On this ground of negligence, alone, plaintiff was entitled to recover. There was evidence that defendant entered and proceeded across the intersection at the rate of speed of thirty miles an hour. There is no question from this evidence but that the jury could find that the automobile was being operated at a high and negligent rate of speed.

"It is the duty of a motorist approaching a street intersection to have his vehicle under control, and to observe what is or may be approaching on the other street; and where another vehicle is first at the crossing to give it an opportunity to clear the same, and to use due care to avoid a collision." [Berry on Automobiles (4 Ed.), p. 830.]

Submitting conjunctively the other alleged matters of negligence mentioned in the instruction, did not make it erroneous although it may have been that they were not submitted with sufficient definiteness notwithstanding they appeared to track the petition very closely. [Jackson v. Railroad, 171 Mo. App. 430, 443, 444; Chambers v. Hines, 233 S. W. 949, 952; Troutman v. Cotton Oil Co., 224 S. W. 1014.]

The petition alleges that defendant "negligently drove said automobile into said intersection at a high and negligent rate of speed, to-wit: Twenty-five miles per hour." It is now claimed that instruction No. 1 is erroneous for the reason that it did not submit the rate of speed mentioned in the petition, to-wit, "twenty-five miles per hour." There is no merit in this contention. [Bradley v. Becker, 296 Mo. 548.]

Complaint is made of plaintiff's instruction No. 2. This instruction is based upon an ordinance of Kansas City pleaded in the petition and introduced in evidence, which provides that "in passing any street intersection, crossing or cross-walk within the limits of Kansas City, Missouri, the rate of speed for driving shall not exceed ten (10) miles per hour when any person or vehicle is upon said intersection, crossing or cross-walk with whom or with which there is or may be danger of collision." Nothing is said in this instruction in reference to the conduct of defendant in passing the intersection being reckless, wanton or willful. It is therefore claimed that the

instruction ignores the allegation of recklessness, wantonness and willfulness in the petition. From what we have said it was not necessary to submit this element in either instruction and there is no inconsistency between plaintiff's instructions Nos. 1 and 2.

There was no error in the action of the court in refusing to give defendant's instruction D-3, which sought to tell the jury that there was no evidence that any of the acts of defendant were committed with a "reckless, wanton and willful disregard for the safety of others." We would not be justified in holding as a matter of law that there was no evidence of reckless, wanton or willful conduct on the part of defendant as those words are understood when used in their broadest significance. Of course, one may be guilty of conduct of this character without any proof that he deliberately caused the collision. As was said in Reel v. Consolidated Inv. Co., supra, l. c. 46—" . . . An act or omission, though properly characterized as negligent, may manifest such reckless indifference to the rights of others that the law will imply that an injury resulting from it was intentionally inflicted. [McNamara v. Transit Co., 182 Mo. 676, 81 S. W. 880, 66 L. R. A. 486; Railroad v. Arms, 91 U. S. 489; 23 L. Ed. 374.] Or, there may be conscious negligence tantamount to intentional wrongdoing, as where the person doing the act or failing to act must be conscious of his conduct, and, though having no specific intent to injure, must be conscious, from his knowledge of surrounding circumstances and existing conditions, that his conduct will naturally or probably result in injury."

There was evidence tending to show that defendant entered and drove across the intersection at a rate of speed of thirty miles per hour without giving any warning whatever or without slackening his speed, when the ordinance limited the speed to not to exceed ten miles per hour under the circumstances. Plaintiff's evidence is not very satisfactory on the question as to the amount of congestion of traffic at the intersection when the collision occurred. However, the record fairly discloses that it was near the Union Station and within a block of two hotels and a restaurant on Main street, and defendant's evidence shows that a street car and automobiles were passing at and about the time of the collision. The record also fairly discloses that defendant was familiar with the conditions. Under the circumstances we cannot say that there was no evidence of any reckless, wanton and willful conduct on the part of defendant. [McKenzie v. Randolph, 257 S. W. 126; State v. Morrison, 104 Mo. 638; Berry on Automobiles, (4 Ed.), p. 170.]

The judgment is affirmed. *Arnold, J.*, concurs; *Trimble, P. J.*, absent.